UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

———————————

№ 20-CV-6009 (LDH) (RER)

———————————

Tae Won Kim, Hee Soo Kim, and Heather Kim,

Plaintiffs,

versus

Kini LLC Corp., Juwon Song, and Chan Young Park,

Defendants.

———————————

**REPORT & RECOMMENDATION**

June 13, 2022

———————————

**To The Honorable LaShann DeArcy Hall
United States District Judge**

**RAMON E. REYES, JR., U.S.M.J.:**

Plaintiffs Tae Won Kim, Hee Soo Kim, and Heather Kim (collectively, "Plaintiffs") commenced this wage-and-hour action, against Kini LLC Corp. ("Kini LIC"), a catering company and restaurant based in Long Island City, Queens,[1] and its former owners, Juwon Song and Chan Young Park (collectively "Defendants"), alleging numerous violations of the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq*. ("FLSA") and of the New York Labor Law ("NYLL"). (ECF No. 1 ("Compl.")). Defendants contend that Plaintiffs' allegations are frivolous, as the Plaintiffs were never employees of Kini LIC; rather, they allege that plaintiffs Tae Won and Heather Kim were

---

[1] Although the case caption reads "Kini *LLC* Corp.," the certificate of incorporation and other materials submitted by plaintiffs and defendants refer to the restaurant as "Kini *LIC* Corp." Accordingly, the Court uses "Kini LIC" to refer to this entity.

1

the Defendants' partners in a joint venture to operate a restaurant business called Kini Won, and that plaintiff Hee Soo Kim is Heather Kim's sister who never worked for either entity. (*See* ECF No. ("Ans.") ¶¶ 90–97). Based on the purported frivolity of Plaintiffs' allegations, Defendants moved for sanctions pursuant to Rule 11(c) of the Federal Rules of Civil Procedure on September 24, 2021, seeking dismissal of the suit, attorneys' fees, and costs. (ECF No. 20 ("Mot. for Sanctions")). Your Honor referred the motion to me for a report and recommendation on October 4, 2021. (Order dated 10/04/2021).

After carefully reviewing the record, for the reasons set forth herein, I respectfully recommend that the motion be denied.

## **BACKGROUND**

According to the complaint, Plaintiffs were hired by Defendants and began working for Kini LIC on October 2, 2019. (Compl. ¶¶ 7–8, 14, 29–34). Plaintiffs allege that during their respective periods of employment, they were each covered by the FLSA and NYLL, yet: (1) were not paid any wages whatsoever, including overtime wages; (2) were not informed of their hourly pay rate or whether they were subject to a tipped workers rate; (3) were not provided pay stubs, wage statements, or other statutorily required information; and (4) were not given statutorily required meal periods. (Compl. ¶¶ 3–4, 24, 35–80).

Soon after Defendants were served with the complaint (ECF No. 7), their attorneys mailed a "formal good faith inquiry" letter to Plaintiffs' counsel, along with a copy of a joint venture agreement signed by defendants Song and Park and plaintiffs Tae Won and Heather Kim. (ECF No. 11-1 ("Jan. 8, 2021 Good Faith Inquiry Ltr."); *see also* ECF No. 20-2, Ex. A ("JV Agreement")

at 6–11).[2] Pursuant to that agreement, plaintiffs Tae Won and Heather Kim agreed to provide $180,000 over an eight month period in exchange for a combined 50% interest in a new venture, known as Kini, Kini Won, or Kini Won Corp., which would exist to "run [the] Kini brand business . . . [including the] Kini restaurant, catering and food service, and all related businesses." (JV Agreement at 7–8). According to the agreement, defendant Song would serve as the day-to-day business manager of the venture, and would obtain a 50% interest in exchange for transferring the goodwill of the prior restaurant business, Kini LIC Corp. (*Id.*). In their good faith inquiry letter, Defendants noted that Plaintiffs' counsel may not have been aware of this agreement prior to filing suit, but explained their belief that the agreement precluded the existence of an employer-employee relationship and therefore claims brought under the FLSA and NYLL were meritless. (Jan. 8, 2021 Good Faith Inquiry Ltr.).

Soon after sending this initial letter, Defendants filed an answer in which they denied every substantive allegation in the complaint (Ans. ¶¶ 1–8, 10–80), and sent Plaintiffs a "safe harbor letter" pursuant to Rule 11(c) urging them to consider withdrawing the complaint by February 1. (*See* ECF No. 11-2 ("Jan. 11, 2021 Safe Harbor Letter")). After receiving no response, Defendants requested a pre-motion conference with the Court to file a motion for sanctions, including dismissal of the action, for Plaintiffs' asserting frivolous causes of action. (ECF No. 11).

After Defendants' request was filed, Plaintiffs responded with their own letter "motion for sanctions" and more than one hundred pages of exhibits, in which they conceded that Tae Won and Heather Kim were partners in the joint venture, but argued that Song did not keep up his end

---

[2] Defendants' good faith inquiry letter also contains allegations concerning the Plaintiffs' application for and receipt of a $150,000 Economic Injury Disaster Loan ("EIDL") from the Small Business Administration in the joint venture's name, without Defendants' consent or knowledge. (Jan. 8, 2021 Good Faith Inquiry Letter). The parties have contested the issue throughout subsequent filings, but Defendants have not formally raised any counterclaims in connection with the purportedly fraudulent loan.

3

of the bargain. (ECF No. 12 ("Pl's Resp. to Initial Rule 11 Ltr. Mot.")). According to Plaintiffs, Defendants retained their $100,000 capital contribution, withdrew funds from a Kini Won bank account for personal use, never transferred the goodwill of the prior business to the new joint venture, continued to operate the business as Kini LIC, and failed to share any profits of the venture as contemplated by the agreement. (*Id.* at 1–2). Further, Plaintiffs maintained that they "believed that they were working for [the joint venture] but in fact they were working for [Kini LIC]," and that they provided their labor for Kini LIC, but were not paid for their efforts. (*Id.* at 2). Plaintiffs also alleged in their letter that the Defendants eventually sold the business for $40,000 to a third party without distributing any of the proceeds to the Plaintiffs, and that Defendants stole the Plaintiffs' mother's identity in order to obtain a Paycheck Protection Program ("PPP") loan for Kini LIC. (*Id.* at 3).

After the pre-motion conference on Defendants' initial motion, given the high burden imposed by Rule 11 and the existence of factual issues, the parties chose to proceed with discovery and litigate their claims on the merits rather than continue to pursue sanctions. (Minute Entry dated 02/26/2021).[3] The parties were also ordered to exchange initial disclosures, to meet and confer to discuss settlement, and to provide the Court with a status report on those discussions. (*Id.*). However, the resulting status report demonstrated further bad blood between the parties and accentuated their impasse. (ECF No. 15). As Plaintiffs aptly noted, "not only do the parties differ on what the facts are, they also disagree on what the law is[.]" (*Id.* at 2). At that time, Defendants indicated that the Plaintiffs missed the deadline to produce initial disclosures and provided no materials to support the allegations in the complaint. (*Id.* at 2–3). Accordingly, Defendants noted

---

[3] The parties also discussed amending the pleadings to include breach of contract and unjust enrichment claims in connection with the allegedly breached joint venture agreement and the loan issues; however, the Plaintiffs have not sought leave to amend the complaint, and as noted above, the Defendants have not filed any counterclaims in connection with the alleged EIDL loan issues.

4

for the Court that they served Plaintiffs with a renewed Rule 11 safe harbor letter and planned to seek leave to move for sanctions again. (*Id.* at 3; *see also* ECF No. 20-2, Ex. Y at 335–351 ("Apr. 15, 2021 Renewed Safe Harbor Letter")).

Before the scheduled close of discovery, Defendants sought leave to file a second motion for sanctions on May 14, 2021. (ECF No. 16). This Court granted them leave to do so, set a briefing schedule for the motion on June 9, 2021 (Order dated 06/09/2021), and, given the prospective motion practice, adjourned the scheduled pre-trial conference *sine die* (Order dated 08/20/2021). After a number of extensions, the motion was fully briefed and filed on September 24, 2021. (Order dated 07/06/2021; Order dated 07/29/2021; Order dated 09/14/2021; Mot. for Sanctions). Your Honor referred the motion to me on October 4, 2021. (Order dated 10/04/2021).

Along with their respective briefs, the parties submitted copious records in support of their positions: with their motion for sanctions and memorandum of law, Defendants filed declarations from their attorney, Younghoon Ji (ECF No. 20-2 ("Ji Decl.")), from defendant Song (ECF No. 20-3 ("Song Decl.")), and from defendant Park ("Park Decl."); and a statement listing attorneys' fees through June 2021 (ECF No. 20-5 "Fee Statement")). Defendants also filed hundreds of pages of exhibits, including, *inter alia*, Kini Won and Kini LIC Bank Statements and tax documents; contracts related to the winding up of Kini LIC's affairs; profit and loss statements for Kini Won; email and text communications in Korean and English regarding transfers of accounts from Kini LIC to Kini Won, loan applications, accounting and other business issues, along with corresponding certified translations for Korean language documents; and the translated transcript of a conversation between plaintiff Tae Won Kim and defendant Song that took place on or about June 17, 2020. (ECF No. 20-2 Exhibits A–Y).[4] With their reply (ECF No. 21 ("Pl's Reply"),

---

[4] The transcript, in particular, includes an affidavit from Song indicating the time, place, and date of the conversation and an indication that the conversation was recorded "with both parties' consent," and contains a translator's affidavit

5

Plaintiffs similarly filed a brief memorandum of law and more than one hundred pages of exhibits, including 130 pages of mixed Korean and English text messages without corresponding translations (ECF No. 21-1, (Ex. A to Pl's Reply")),[5] a copy of the joint venture agreement (ECF No. 21-2), affidavits from each of the three Plaintiffs describing the business relationship among the parties (ECF No. 21-3), a photograph of portions of the Kini LIC asset sales contract (ECF No. 21-4), and screenshots of a PPP borrower application form (ECF No. 21-5).

## **DISCUSSION**

Rule 11(b) of the Federal Rules of Civil Procedure provides:

> By presenting to the court a pleading, written motion, or other paper—whether by signing, filing, submitting, or later advocating it—an attorney . . . certifies that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances: (1) it is not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; (2) the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the denials of factual contentions are warranted on the evidence or, if specifically so identified, are reasonably based on belief or a lack of information.

Fed. R. Civ. P. 11(b). Accordingly, Rule 11 requires that, "to avoid the risk of sanctions, a party's counsel must undertake a reasonable inquiry to 'ensure that papers filed are well-grounded in fact, legally tenable, and not interposed for any improper purpose.'" *Hamlett v. Santander Consumer*

---

certifying that the transcript and translation is "true, accurate and complete." (ECF No. 20-2, Ex. J at 216–17). Despite these affidavits, the transcript appears to begin and end in the middle of the parties' conversation (*Id.* at 194–215), and Plaintiffs have previously made reference to "surreptitiously[] recorded" conversations that have been produced by the Defendants (ECF No. 15).

[5] Defendants argue that these foreign language conversations are inadmissible because they are not accompanied by a certified English translation, and that they should therefore be disregarded. (ECF No. 22 ("Def's Reply") at 9–10). While these materials would not presently be admissible for the purposes of summary judgment or at trial, they may, upon translation, ultimately offer some support for Plaintiffs' factual contentions that would preclude the imposition of sanctions. *See Almeciga v. Ctr. for Investigative Reporting, Inc.*, 185 F. Supp. 3d 401, 436 (S.D.N.Y. 2016) (weak, irrelevant, and ultimately inadmissible evidence nevertheless provided some support for plaintiff's allegations such that counsel was not unreasonable in relying on the evidence such that sanctions should be imposed).

*USA, Inc.*, No. 11-CV-6106 (JFB) (GRB), 2014 WL 5425515, at *1 (E.D.N.Y. Oct. 22, 2014) (quoting *Gal v. Viacom Int'l, Inc.*, 403 F. Supp. 2d 294, 307 (S.D.N.Y. 2005)). "A court may sanction an attorney, law firm, or party that violates Rule 11(b), but only after providing notice and a reasonable opportunity to respond." *Lawrence v. Richman Grp. of CT LLC*, 620 F.3d 153, 156 (2d Cir. 2010) (citing Fed. R. Civ. P. 11(c)(1)); *see also Lorber v. Winston*, 993 F. Supp. 2d 250, 252 (E.D.N.Y. 2014) ("Rule 11(c) provides a safe harbor of twenty-one days during which time factual or legal contentions may be withdrawn or appropriately corrected in order to avoid sanctions.") (citing Fed. R. Civ. P. 11(c)(1)(A)).[6]

"In implementing this rule, 'courts have long held that an attorney could be sanctioned for conduct that was objectively unreasonable,' which can include 'misrepresenting facts or making frivolous legal arguments.'" *Bank v. CreditGuard of Am., Inc.*, No. 18-CV-1311 (PKC) (RLM), 2020 WL 1516107, at *2 (E.D.N.Y. Mar. 30, 2020) (quoting *Muhammad v. Walmart Stores E., L.P.*, 732 F.3d 104, 108 (2d Cir. 2013)). In cases "[w]here . . . a motion for sanctions is based on the submission of unsupported factual allegations, 'sanctions may not be imposed unless a particular allegation is utterly lacking in support.'" *Desilva v. N. Shore-Long Island Jewish Health Sys., Inc.*, 27 F. Supp. 3d 313, 332 (E.D.N.Y. 2014) (quoting *Storey v. Cello Holdings*, 347 F.3d 370, 388 (2d Cir. 2003)). In cases challenging a party's legal arguments, "[t]he operative question is whether the argument is frivolous, *i.e.*, the legal position has 'no chance of success,' and there is 'no reasonable argument to extend, modify or reverse the law as it stands.'" *Fishoff v. Coty Inc.*, 634 F.3d 647, 654–55 (2d Cir. 2011) (quoting *Morley v. Ciba–Geigy Corp.*, 66 F.3d 21, 25 (2d Cir. 1995) (internal quotation marks omitted)). "When divining the point at which an argument turns from merely losing to losing and sanctionable, courts must resolve all doubts in favor of the

---

[6] There is no doubt that Defendants have complied with the procedural requirements of Rule 11. (*See* Jan. 11, 2021 Safe Harbor Letter; Apr. 15, 2021 Renewed Safe Harbor Letter).

7

signer of the pleading." *CreditGuard of Am., Inc.*, 2020 WL 1516108, at *2 (quoting *Umar Oriental Rugs, Inc. v. Carlson & Carlson, Inc.*, 757 F. Supp. 2d 218, 228 (E.D.N.Y. 2010) (alterations and internal citations omitted)).

Importantly, "'[i]n assessing whether Rule 11 sanctions should be imposed, the court does not judge the merits of an action.' Rather, when performing a Rule 11 analysis, the Court determines 'a collateral issue: whether the attorney has abused the judicial process, and, if so, what sanction would be appropriate.'" *Silverman v. Town of Riverhead*, No. 07-CV-3235 (SJF) (AKT), 2008 WL 11449317, at *4 (E.D.N.Y. Sept. 11, 2008) (quoting *Safe-Strap Co., Inc. v. Koala Corp.*, 270 F. Supp. 2d 407, 417 (S.D.N.Y. 2003)), *adopted by* 2008 WL 11450630 (Sept. 29, 2008); *see also Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 396 (1990) ("[T]he imposition of a Rule 11 sanction is not a judgment on the merits of an action.").

Defendants maintain that Plaintiffs and their attorneys violated Rule 11(b) by proffering frivolous legal arguments "not supported by the relevant facts of the case," and by failing "to produce any evidentiary materials supporting such argument despite the fact that they had ample opportunity to do so." (ECF No. 20-1 ("Def's Mem. of Law") at 14). They further argue that "[t]here is no reasonable justification for the Plaintiffs and their counsel's conduct of bringing the instant lawsuit in federal District Court under the FLSA alleging that the Plaintiffs were employees of the Defendants when in fact the Plaintiffs' claims, the Defendants' defenses, and the Defendants' potential counterclaims are predominantly state law claims of breach of contract at most." (*Id.* at 18). Finally, Defendants argue that "Plaintiffs and their counsel made repeated false and misleading statements to the Defendants and the Court," and list thirteen examples of purportedly sanctionable misrepresentations, drawn from the complaint itself and from Plaintiffs' response letter to Defendants' initial Rule 11 motion. (*Id.* at 20–22). In sum, Defendants fervently

8

deny the allegations in the complaint, challenge the sufficiency of the evidence that Plaintiffs have proffered so far in support of their claims, and ask the Court to impose sanctions for filing what they see as meritless claims.

However, "[a] motion for summary judgment, and not a Rule 11 motion, is the proper vehicle to 'raise issues of legal sufficiency.'" *Acosta v. Loc. 101, Transp. Workers Union of Am. AFL-CIO*, 339 F. Supp. 3d 80, 88 n.7 (E.D.N.Y. 2018) (citing *Safe-Strap Co.*, 270 F. Supp. 2d at 416); *see also CreditGuard of Am., Inc.*, 2020 WL 1516107, at *3 ("FRCP 11 motions should not be used 'to test the legal sufficiency or efficacy of allegations in the pleadings; other motions are available for those purposes.") (quoting *E. Gluck Corp. v. Rothenhaus*, 252 F.R.D. 175, 179 (S.D.N.Y. 2008)); *Blue v. United States Dep't of the Army* 914 F.2d 525, 535 (4th Cir. 1990) ("[C]laims that are plainly meritless should be disposed of early in the course of litigation through summary judgment or other pretrial motion[s] . . . As a general matter, dismissal of a frivolous . . . case on the merits should be a first option, whereas imposition of sanctions should be a matter of last resort."), *cert. denied sub nom., Chambers v. United States Dep't of the Army* 499 U.S. 959 (1991).

Here, Defendants have not moved to dismiss the action or for summary judgment, and have not made any pretrial motions aside from motions for sanctions. Notwithstanding the substantial evidentiary record that the parties have submitted for the Court's consideration on this motion, resolving a Rule 11 motion for sanctions remains a collateral issue. Accordingly, it is inappropriate to examine the proffered documents and resolve questions of fact or disputes regarding the law on their merits at this stage. *See Esposito v. Suffolk Cnty. Cmty. Coll.*, No. 16-CV-04833 (ADS) (ARL), 2019 WL 1044099, at *6 (E.D.N.Y. Mar. 4, 2019) ("Essentially, the Defendants are asking the Court to award sanctions because they believe the merits of their defense. However, resolving

9

the Defendants' arguments would require the Court to make a factual determination regarding a claim essential to the merits of the action, an issue for which a Rule 11 motion is an inappropriate vehicle.") (citing *Lorber*, 993 F. Supp. 2d at 253; *Safe-Strap Co.*, 270 F. Supp. 2d at 417). Indeed, the existence of such voluminous and contradictory records and affidavits shows that there are unresolved issues of fact. As I noted at the pre-motion conference on Defendants' initial motion for sanctions: litigation, rather than sanctions, is the appropriate vehicle for these factual disputes.

Accordingly, I respectfully recommend that Defendants' motion for sanctions be denied. Defendants should, however, be granted leave to renew their motion for sanctions once the case has been resolved on the merits to determine whether Plaintiffs' initial filing of the case was indeed improper. *See Safe-Strap Co.*, 270 F. Supp. 2d at 416 ("Courts should, and often do, defer consideration of certain sanctions motions until the end of the litigation to gain a full sense of the case and to avoid unnecessary delay of disposition of the case on the merits. This is a sensible practice where, as here, the thrust of the sanctions motion is that institution of the case itself was improper.") (quoting *Lichtenstein v. Consolidated Serv. Group, Inc.* 173 F.3d 17, 23 (1st Cir. 1999) (alterations omitted)); *see also Sang Lan v. Time Warner, Inc.,* No. 11 Civ. 2870 (AT) (JCF), 2015 WL 4469838, at *2 (S.D.N.Y. July 13, 2015) ("[W]here a Rule 11 motion is based on the institution of the action itself, it will generally not be decided until after the litigation is complete.") (collecting cases).

## CONCLUSION

For the reasons set forth above, I respectfully recommend that Defendants' motion for sanctions be denied, without prejudice.

Defendants' counsel is hereby directed to serve copies of this Report and Recommendation upon the Plaintiffs by regular and certified mail and to file proof of service with the Clerk of the

10

Court. Any objections to the recommendations made in this Report must be filed with the Clerk of the Court and the Honorable LaShann DeArcy Hall within fourteen (14) days of receipt hereof. Failure to file timely objections waives the right to appeal the District Court's Order. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72; *Small v. Sec'y of Health & Human Servs.*, 892 F.2d 15, 16 (2d Cir. 1989).

RESPECTFULLY RECOMMENDED.

/s/ Ramon E. Reyes, Jr

HON.RAMON E. REYES, JR.
United States Magistrate Judge

Dated: June 13, 2022
Brooklyn, NY